## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

LONNIE KEVIN CRANE,

       **Plaintiff,**

v.                                         **Case N0. 3:15-cv-04407**

ADMINISTRATOR CRAWFORD,

       **Defendant.**

### PROPOSED FINDINGS AND RECOMMENDATIONS

On April 10, 2015, Plaintiff Lonnie Kevin Crane ("Crane") filed his *pro se* complaint pursuant to 42 U.S.C. § 1983, (ECF No. 2), alleging that his constitutional rights were violated by the inadequacy of the law library system at the Western Regional Jail ("WRJ"), where he was previously incarcerated and where Larry Crawford is the Jail Administrator.[1] Pending before the Court are Crane's Motion for Default Judgment, (ECF No. 19), Motion to Impose Sanctions, (ECF No. 38), and Motion to File for Sanctions, (ECF No. 46), as well as Defendant's Motion to Dismiss Complaint, (ECF No. 10), and Motion to Dismiss Complaint for Failure to Exhaust Administrative Remedies, (ECF No. 30). This matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and by Standing Order has been referred to the undersigned United States

---

[1] Although an inmate search of the West Virginia Division of Corrections website on November 4, 2015 reveals that Crane is incarcerated at the WRJ, Crane submitted a letter to the Clerk of Court dated October 25, 2015 informing the Clerk that he had been transferred to Salem Correctional Center in Industrial, West Virginia. (ECF No. 51 at 1).

Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons that follow, the undersigned **RECOMMENDS** that Defendant's Motion to Dismiss Complaint, (ECF No. 10), be **GRANTED**, and Crane's complaint, (ECF No. 2), be **DISMISSED, with prejudice**. In addition, the undersigned **RECOMMENDS** that Crane's Motion for Default Judgment, (ECF No. 19), be **DENIED**; Crane's Motion to Impose Sanctions, (ECF No. 38), be **DENIED**; Crane's Motion to File for Sanctions, (ECF No. 46), be **DENIED** as moot; and Defendant's Motion to Dismiss for Failure to Exhaust Administrative Remedies, (ECF No. 30), be **DENIED** as moot.

## I.      Factual and Procedural History

On April 10, 2015, Crane filed his complaint alleging that the "inadequate operation of the law library" at the WRJ violates his Sixth Amendment right to counsel.[2] (ECF No. 2 at 4, 6). Crane's complaint faults WRJ policy regarding both the ability of inmates to utilize the library and the contents of the library. With respect to law library access, Crane asserts that he was not provided a password to use the law library computer research system until ten days after he was arrested and one day after the preliminary hearing in his criminal case was held. (*Id.* at 7). He also complains that he was only allotted one hour of law library time each week and that his second visit to the library was "wasted" because a correctional officer confiscated his broken eyeglasses and he could not see until he was provided a different pair of eyeglasses later that day. (*Id.* at 9, 13). As for the adequacy of the law library, Crane takes issue with the library's lack of books and the use of a LexisNexis legal research computer program that does not permit query searches,

---

[2] Crane explains in his complaint that he named WRJ Administrator Crawford as the defendant after reviewing the "chain of command" for the WRJ. (ECF No. 2 at 5).

only "manual[]" searches requiring the user to click through various cases or statutes. (*Id.* at 9). In addition, Crane criticizes the WRJ for not having a paralegal available to aid him during his library time. (*Id.*) Ultimately, Crane asserts that his "fundamental right to the law library" under the Sixth Amendment was violated by Administrator Crawford and that this violation occurred at a critical time in his criminal case (the pretrial stage). (*Id.* at 13).

On the subject of relief, Crane seeks dismissal of the felony criminal charge that was pending at the time that he filed his complaint (of which he has since been convicted) and monetary damages in the amount of $500,000. (*Id.* at 10). Additionally, Crane asks that the Court order Administrator Crawford to bring the law library "up to muster immediately." (*Id.*)

On April 15, 2015, the undersigned ordered the Clerk of Court to issue a summons for Administrator Crawford, which was to be served by the United States Marshals Service. (ECF No. 4). The United States Marshals Service served the summons by certified mail, and the receipt card for the summons was returned on May 11, 2015. (ECF No. 9 at 2). On June 8, 2015, Administrator Crawford filed a Motion to Dismiss Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 10). Administrator Crawford insists that the complaint should be dismissed because he is entitled to Eleventh Amendment immunity from suit and the complaint is frivolous. (ECF No. 11 at 3-4). In support of the latter position, Administrator Crawford contends that Crane filed a similar lawsuit in the Northern District of West Virginia challenging the adequacy of the law library at Tygart Valley Regional Jail and that lawsuit was dismissed. (*Id.* at 4).

In response to Administrator Crawford's Motion to Dismiss Complaint, Crane filed a number of lengthy handwritten documents containing meandering prose. In one

document, he generally reasserts the claims contained in his complaint and avers that his lawsuit against Tygart Valley Regional Jail was originally dismissed with prejudice, but the presiding district judge later "reversed" this decision, dismissed the complaint without prejudice, and "urg[ed] Crane to refile his suit."[3] (ECF No. 17 at 4-13). Crane also repeatedly attacks Administrator Crawford's counsel's style of writing and its purportedly "disjunctive form," which Crane believes invalidates Administrator Crawford's Motion to Dismiss Complaint. (*Id.* at 20-23; ECF No. 22 at 5; ECF No. 22-2 at 6). Concerning Administrator Crawford's Eleventh Amendment immunity argument, Crane responds that the "defense of immunity by a non-consenting state is a blatant violation of the basic right of due process." (ECF No. 22-3 at 3).

On July 8, 2015, Crane filed a Motion for Default Judgment pursuant to Federal Rule of Civil Procedure 55. (ECF No. 19). In his supporting brief, Crane asserts that Administrator Crawford's answer to the complaint was due by June 1, 2015, and that Administrator Crawford did not file his Motion to Dismiss Complaint until June 8, 2015. (ECF No. 22-3 at 6). As such, Crane requests that a default judgment be entered against Administrator Crawford. (*Id.* at 9). On July 17, 2015, Administrator Crawford filed a response to Crane's Motion for Default Judgment. (ECF No. 24). Therein, Administrator Crawford contends that entry of a default judgment is an "extreme sanction" and that there is a policy within the Fourth Circuit in favor of deciding a case on its merits. (*Id.* at 2-3). In addition, Administrator Crawford argues that Crane suffered no prejudice as a

---

[3] In *Crane v. Tygart Valley Reg'l Jail*, No. 5:06cv83, 2006 WL 3359570, at *1 (N.D.W.Va. Nov. 17, 2006), Crane alleged that the law library at Tygart Valley Regional Jail was unconstitutional for many of the same reasons that he raises in the instant action. The district court dismissed Crane's claim without prejudice. 2006 WL 3840271, at *2 (N.D.W.Va. Dec. 29, 2006). In another § 1983 action, Crane brought suit against the Central Regional Jail claiming that its law library was insufficient. *Crane v. Cent. Reg'l Jail*, No. 2:06cv70, 2007 WL 1830717, at *2 (N.D.W.Va. June 22, 2007). The district court dismissed Crane's complaint with prejudice because Crane had not named a person as a defendant. *Id.* at *1, *3.

result of the minimal delay in responding to the complaint, that he has no history of dilatory action in this action, that there is a large sum of money at stake along with potentially costly injunctive relief, that there is a dispute as to the sufficiency of the law library, and that Eleventh Amendment immunity bars Crane's lawsuit. (*Id.* at 3). In his reply briefs, Crane insists that Administrator Crawford's request for a "trial on the merits" and "decision on the merits," (ECF No. 24 at 2-3), are disingenuous because Administrator Crawford actually seeks dismissal of Crane's complaint on the grounds of Eleventh Amendment immunity. (ECF No. 25 at 4; ECF No. 26 at 1-2, 10; ECF No. 27 at 18, 20).

On August 6, 2015, Administrator Crawford filed a Motion to Dismiss for Failure to Exhaust Administrative Remedies. (ECF No. 30). In his motion, Administrator Crawford avers that Crane failed to exhaust his administrative remedies for the claims contained in the complaint, which is a prerequisite to filing suit in federal court under 42 U.S.C. § 1997e(a). (ECF No. 30 at 2). Attached to Administrator Crawford's motion is an affidavit from Amber Massey, the administrative secretary to the Deputy Director of the West Virginia Regional Jail and Correctional Facility Authority ("the Authority"). (ECF No. 30-1 at 2). Ms. Massey states that one of her duties as administrative secretary is to receive and log all mail directed to the Authority's administrative offices. (*Id.* at 2). In reviewing the mail logs, Ms. Massey determined that Crane had forwarded no grievance appeals to the Authority's administrative offices, which she states is "provided for in the policy and procedure for [] inmate grievances." (*Id.*)

In a letter to the Clerk of Court dated August 17, 2015, Crane states that he attempted to file a grievance with respect to law library access when he first arrived at the jail, but there were no grievance forms and he had no paper or pen to use in handwriting

a grievance. (ECF No. 35 at 8-9). Thereafter, Crane claims that he submitted a request to an official at the jail asking for additional law library time on March 16, 2015, which was denied the same day. (*Id.* at 4). Crane asserts that he then filed a grievance regarding his law library time and the contents of the law library on March 30, 2015. (*Id.* at 4-5). According to Crane, he never received a response to his grievance. (*Id.* at 5-6). Crane adds that, as of the date of his letter, he had not been provided access to the law library for five weeks and that he had been placed in "the hole." (*Id.* at 1-2).[4]

In a letter to the Clerk of Court dated September 4, 2015, Crane again accuses Administrator Crawford of being insincere in his request for a decision on the merits and insists that Administrator Crawford's counsel has told lies throughout this action, including the assertion that Crane has not exhausted the administrative remedies for his claim. (ECF No. 38-1 at 13, 16). Additionally, Crane criticizes Administrator Crawford's use of "disjunctive" allegations and conclusory statements. (*Id.* at 21-22). On the subject of exhaustion, Crane concedes that he did not file any grievance appeals, but again asserts that he electronically filed a grievance related to the law library before filing this lawsuit and never received a response. (*Id.* at 27, 29-30, 35, 52). Crane also maintains that he requested a paper copy of his filed grievance, but he was told by a correctional officer that he must subpoena the document before he can access it. (*Id.* at 33, 37). Finally, Crane claims that he was never told about the grievance appeal procedure described in the "Inmate Handbook," a copy of which Crane states he never received, and that he was in

---

[4] In an August 18, 2015 filing, Crane accuses certain correctional officers at the jail of encouraging inmates to "spray feces and urine" on other inmates. (ECF No. 33 at 4). Crane also claims that a correctional officer informed other inmates that Crane was a "snitch," which led to an inmate spraying a mixture of mop water and "Lord knows what" under the door of Crane's cell. (*Id.* at 2). Crane does not state that he has raised this issue in any grievance procedure, but does indicate that he plans on filing another lawsuit related to the correctional officers' alleged behavior. (*Id.*)

fact told that the only way to access the grievance process was to use the electronic "kiosk," which Crane insists he did. (*Id.* at 9, 38).

On September 9, 2015, Crane filed a Motion to Impose Sanctions. (ECF No. 38 at 1). In his accompanying memorandum of law, Crane states that he is seeking sanctions against Administrator Crawford's counsel for "gross incompetency," "recklessness," and "bold faced lie[s]." (ECF No. 39 at 7). By way of example, Crane accuses Administrator Crawford's counsel of telling an untruth when he states that Crane has not exhausted his administrative remedies and being dishonest when he claims that Administrator Crawford desires a decision on the merits. (*Id.* at 8, 11, 13). Moreover, Crane takes issue with counsel purportedly "ordering" the Court to dismiss the complaint using "disjunctive condition[s]." (*Id.* at 9). Crane also contends that counsel inaccurately represented his lawsuit against Tygart Valley Regional Jail as frivolous. (*Id.* at 10). As to the specific sanction that Crane requests, he asks the Court to award him monetary damages in the amount of $96,000, which includes an attorney fee of $100 per hour and "other expenses" incurred as a result of counsel's alleged "violation[s]." (*Id.* at 16-17).

On September 24, 2015, counsel for Administrator Crawford filed a response to Crane's motion for sanctions. (ECF No. 42). In his response, counsel avers that it is unclear from Crane's memorandum "the specific paper, claim, defense, contention, or denial that is the subject" of the motion for sanctions. (*Id.* at 1). Furthermore, counsel argues that Federal Rule of Civil Procedure 11(c)(2) requires the party seeking sanctions to refrain from filing the motion until providing the other party twenty-one days to withdraw or correct the challenged paper, claim, defense, contention, or denial. (*Id.*) Here, counsel claims that Crane failed to follow this rule and that Crane's motion lacks substance. (*Id.*)

On October 13, 2015, Crane's reply to counsel's response opposing sanctions was filed. (ECF No. 45). In his reply brief, Crane again accuses counsel of lying and points to Administrator Crawford's Response in Opposition to Plaintiff's Motion for Default Judgment as an example. (*Id.* at 21). In that brief, Crane points out that counsel refers to Crane's complaint as an amended complaint, while Crane has never amended his complaint. (*Id.*; ECF No. 24 at 1). Further, Crane once more contends that counsel mischaracterized the court's decision in his lawsuit against Tygart Valley Regional Jail and that counsel was dishonest when he stated Administrator Crawford desired a decision on the merits in this case. (ECF No. 45 at 26, 33). In addition, Crane lists counsel's other purported behavior that he believes warrants sanctioning: "(1) bold faced lies; (2) total disrespect for the position and title of the Honorable Federal Judges; (3) intentional, methodical, and repetitious actions with total disregard for the penalties of perjury under oath; and (4) the total lack of regard for the repercussions should the Honor Court decide to impose sanctions." (*Id.* at 24). As for Rule 11's "safe harbor" provision, Crane argues that he had yet to file the motion for sanctions at the time of counsel's response to the motion, but that, as of the date of his reply, he is requesting that his motion for sanctions be filed. (*Id.* at 30-32). Furthermore, Crane claims that he brought these "violations" to counsel's attention throughout his briefs in this case. (*Id.* at 36).

On October 16, 2015, Crane filed a Motion to File for Sanctions, which is presumably a formal request that his Motion to Impose Sanctions, (ECF No. 38), be filed. (ECF No. 46). In an accompanying memorandum filed the same day, Crane insists that sanctions are also warranted based on counsel's alleged misquotation of Rule 11 in his response brief. (ECF No. 49 at 6, 8-9). In a letter dated October 25, 2015, Crane informed the Clerk of Court that he was no longer housed at the WRJ and that he had been

transferred to Salem Correctional Center in Industrial, West Virginia. (ECF No. 51 at 1).

## II.   **Standards of Review**

### A. Motion for Default Judgment

Crane has moved for entry of a default judgment pursuant to Federal Rule of Civil Procedure 55. Under Rule 55(a), the entry of a default by the clerk is required where "a party against whom a judgment or affirmative relief is sought has failed to plead or otherwise defend ...." After the clerk enters a default, the party seeking a default judgment may request that the clerk enter judgment against a non-appearing party "for a sum certain or a sum that can be made certain by computation," after providing the clerk with "an affidavit showing the amount due." Fed. R. Civ. P. 55(b)(1). "In all other cases, the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2). "When considering a motion for a default judgment, the court accepts the well-pleaded factual allegations in the complaint regarding liability as true. Nevertheless, liability is not deemed established simply because of default ... and the court, in its discretion, may require some proof of the facts that must be established in order to determine liability. Once liability has been established, the court must make an independent determination concerning the damages to be awarded." *Finney v. MIG Capital Mgmt., Inc.*, No. 2:13-02778, 2014 WL 1276159, at *9-*10 (S.D.W.Va. Mar. 27, 2014) (markings and citations omitted) (ellipsis in original); *see also* Fed. R. Civ. P. 55(c) (permitting court to hold hearing before entering default judgment on "truth of any allegation," "amount of damages," and "any other matter"). The decision to enter a default judgment rests within the sound discretion of the district court. *Federal Ins. Co. v. Wallace*, No. 2:13cv690, 2015 WL 1011458, at *2 (E.D. Va. Mar. 4, 2015).

### B. Motion to Dismiss

Administrator Crawford has filed two motions to dismiss in this case—one motion under Federal Rule of Civil Procedure 12(b)(6) on the grounds of Eleventh Amendment immunity and frivolousness, and another for failure to exhaust administrative remedies. While a Rule 12(b)(6) motion is the correct procedural vehicle to challenge a frivolous complaint or a plaintiff's failure to exhaust non-jurisdictional administrative remedies, "[t]he Fourth Circuit has not resolved whether a motion to dismiss based on the Eleventh Amendment is properly considered pursuant to Rule 12(b)(1) or 12(b)(6)." *Haley v. Virginia Dept. of Health*, Case No. 4:12-cv-0016, 2012 WL 5494306, at *2 n.2 (W.D. Va. Nov. 13, 2012) (citing *Andrews v. Daw,* 201 F.3d 521, 525, n.2 (4th Cir. 2000)). "The recent trend, however, appears to treat Eleventh Amendment immunity motions under Rule 12(b)(1)." *Id.; see also Zemedagegehu v. Arthur*, No. 1:15cv57, 2015 WL 1930539, at *3 (E.D. Va. Apr. 28, 2015); *Johnson v. North Carolina*, 905 F. Supp. 2d 712, 719 (W.D.N.C. Oct. 17, 2012) (collecting cases). A motion under Rule 12(b)(1) challenges the court's subject matter jurisdiction over the dispute, *Adams v. Bain,* 697 F.2d 1213, 1219 (4th Cir. 1982), while a motion under Rule 12(b)(6) tests the sufficiency of the complaint to state a claim. *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (stating "to survive a 12(b)(6) motion, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face").

A Rule 12(b)(1) motion can be presented in two ways. First, the movant may claim that the jurisdictional allegations of the complaint are not true. *Adams,* 697 F.2d at 1219. In that case, the court "is to regard the pleadings as mere evidence on the issue, and may consider evidence outside of the pleadings without converting the proceeding to one for

summary judgment." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States,* 945 F.2d 765, 768 (4th Cir. 1991) (citing *Adams,* 697 F.2d at 1219). Second, the movant may contend that "a complaint simply fails to allege facts upon which subject matter jurisdiction can be based." *Adams,* 697 F.2d at 1219. When presented with this contention, the court assumes that the allegations in the complaint are true and affords plaintiff the same procedural protection he would receive under Rule 12(b)(6). *Id.* The burden of proving that the court has subject matter jurisdiction rests with the plaintiff. *Johnson*, 905 F.Supp.2d at 719. However, the court should grant dismissal "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.*

On the other hand, Rule 12(b)(6) permits the district court to dismiss a complaint that fails to state a claim upon which relief may be granted. A complaint fails to state a compensable claim when, viewing the well-pleaded factual allegations as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp,* 550 U.S. at 570; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"). "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal,* 556 U.S. at 679. A Rule 12(b)(6) motion should be granted only '"where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory.'" *Hartmann v. Calif. Dept. of Corr. & Rehab.,* 707 F.3d 1114, 1122 (9th Cir.2013) (citing *Mendiondo v. Centinela Hosp. Med. Ctr.,* 521 F.3d 1097,

1102 (9th Cir.2008)).

In the end, whether Eleventh Amendment immunity should be evaluated under Rule 12(b)(1) or 12(b)(6) is a distinction without a difference in this case given that the undersigned has relied solely on the pleadings in resolving that issue, having construed them in the light most favorable to Crane. *Beckham v. Nat'l. R.R. Passenger Corp.,* 569 F.Supp.2d 542, 547 (D.Md. 2008).

### C. Liberal Construction of *Pro Se* Complaints

Crane has filed his complaint *pro se*, and courts are required to liberally construe *pro se* complaints. *Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007). However, even under this less stringent standard, the complaint still must contain sufficient factual allegations to support a valid legal cause of action. *Bass v. E.I. Dupont de Nemours & Co.,* 324 F.3d 761, 765 (4th Cir. 2003). The court may not rewrite the pleading to include claims that were never presented, *Parker v. Champion*, 148 F.3d 1219, 1222 (10th Cir. 1998), construct the plaintiff's legal arguments for him, *Small v. Endicott,* 998 F.2d 411, 417-18 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court. *Beaudett v. City of Hampton,* 775 F.2d 1274, 1278 (4th Cir. 1985).

## III.   Discussion

### A. Crane's Motion for Default Judgment

As discussed above, Crane has moved for the entry of a default judgment pursuant to Federal Rule of Civil Procedure 55(b).[5] An oft-cited treatise on federal practice and procedure suggests that a court should look to a number of factors before entering a

---

[5] Crane has not sought an entry of default from the Clerk of Court pursuant to Federal Rule of Civil Procedure 55(a). However, a number of federal courts have recognized that a court may enter a default before granting a default judgment. *See, e.g., Choice Hotels Int'l, Inc. v. Savannah Shakti Corp.,* No. DKC 11-0438, 2011 WL 5118328, at *1 (D.Md. Oct. 25, 2011); *Burton v. The TJX Cos.,* No. 3:07-CV-760, 2008 WL 1944033, at *2 (E.D. Va. May 1, 2008).

default judgment against a party, including "the amount of money potentially involved; whether material issues of fact or issues of substantial public importance are at issue; whether the default is largely technical; whether plaintiff has been substantially prejudiced by the delay involved; ... whether the grounds for default are clearly established or are in doubt ....[;] how harsh an effect a default judgment might have; or whether the default was caused by a good-faith mistake or by excusable or inexcusable neglect on the part of the defendant." 10A Charles A. Wright et al., *Federal Practice and Procedure* § 2685 (3d ed.1998); *see also EMI April Music, Inc. v. White*, 618 F. Supp. 2d 497, 506 (E.D. Va. 2009) (using same factors in deciding whether to grant default judgment). That same treatise also advises that a court may wish to consider the specific factors for setting aside an entry of default "since it would be meaningless to enter the judgment as a matter of course if that decision meant that the court immediately would be required to take up the question of whether it should be set aside." Wright, *Federal Practice and Procedure* § 2685. Within the Fourth Circuit, "[w]hen deciding whether to set aside an entry of default, a district court should consider whether the moving party has a meritorious defense, whether it acts with reasonable promptness, the personal responsibility of the defaulting party, the prejudice to the party, whether there is a history of dilatory action, and the availability of sanctions less drastic." *Payne ex rel. Estate of Calzada v. Brake*, 439 F.3d 198, 204-05 (4th Cir. 2006). In this context, the Fourth Circuit has also recognized a "strong policy in favor of merits-based adjudication." *Colleton Preparatory Academy, Inc. v. Hoover Universal, Inc.*, 616 F.3d 413, 418 (4th Cir. 2010).

Considering some of the factors set forth in the Wright treatise, the undersigned **FINDS** that entry of a default judgment is not warranted in this case. First, there is a

large sum of money potentially involved in this case based on Crane's claim of monetary damages and his request for likely costly injunctive relief. Second, the default would be largely "technical" in this case since Administrator Crawford missed the responsive deadline by only one week, and he has otherwise been involved in defending against this lawsuit. Third, despite Crane's protestations to the contrary, Crane has not suffered any prejudice from the one-week delay in receiving Administrator Crawford's response to the complaint. Crane has the burden to demonstrate prejudice, such as loss of evidence occasioned by the delay, and he has failed to do so. *See U.S. to Use of Combustion Sys. Sales, Inc. v. E. Metal Products & Fabricators, Inc.*, 112 F.R.D. 685, 691 (M.D.N.C. 1986). Fourth, although it appears that the grounds for default are not in doubt here (Administrator Crawford concedes the delay), a default judgment would have a harsh effect, particularly when the lawsuit's lack of merit is considered. In addition, the minimal delay in Administrator Crawford's response tends to demonstrate that excusable neglect caused his failure to file a timely answer. Overall, these factors weigh in favor of denying Crane's Motion for Default Judgment.

Turning to the Fourth Circuit's factors for setting aside an entry of default, the undersigned similarly **FINDS** that those factors weigh in favor of denying Crane's motion. First, as discussed below, Administrator Crawford has a meritorious defense to Crane's complaint. Second, Administrator Crawford acted with reasonable promptness in responding to the complaint, even though the response was belated, and in responding to Crane's motion for default judgment. Third, it is unclear whether Administrator Crawford is personally responsible for the default, but even assuming *arguendo* that he is responsible, this solitary factor does not counsel in favor of a default judgment. Fourth, as mentioned above, Crane has not suffered any prejudice from Administrator Crawford's

14

delayed response, and he would not have experienced any prejudice if an entry of default had been entered and set aside. Finally, Administrator Crawford does not have a history of dilatory action in this lawsuit.

In light of the Fourth Circuit's policy in favor of deciding cases on their merits, and given that most of the factors discussed above weigh in favor of denying Crane's motion for default judgment, the undersigned **RECOMMENDS** that Crane's Motion for Default Judgment, (ECF No. 19), be **DENIED**.

### B. Administrator Crawford's Motion to Dismiss on the Ground of Eleventh Amendment Immunity

The Eleventh Amendment to the United States Constitution provides, in relevant part, that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. art. XI. Although the Eleventh Amendment refers only to suits by citizens of other states, the United States Supreme Court has construed the Amendment to "establish that an unconsenting State is immune from suits brought in federal court by her own citizens as well as by citizens of another state." *Port. Auth. Trans–Hudson Corp. v. Feeney*, 495 U.S. 299, 304, 110 S.Ct. 1868, 109 L.Ed.2d 264 (2009) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984)) (markings omitted). The immunity created by the Amendment protects both the State itself and its agencies, divisions, departments, officials, and other "arms of the State." *Taylor v. Ozmint*, Case No. 0:10–50–HMH–PJG, 2011 WL 286133, at *2 (D.S.C. Jan. 7, 2011) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 78, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989)); *see also Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429, 117 S.Ct. 900, 137

15

L.Ed.2d 55 (1977) ("[I]t has long been settled that the reference [in the Eleventh Amendment] to actions 'against one of the United States' encompasses not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities."). Thus, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will*, 491 U.S. at 71. The United States Supreme Court explained in *Will*, "[o]bviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Id.* The Court later clarified its holding, making a distinction between officials acting in their official capacities and officials acting in their personal capacities under color of state law. *Hafer v. Melo*, 502 U.S. 21, 23, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991). The former are immune from prosecution for money damages under § 1983, while the latter are not. The Court explained that because the real party in interest in an "official-capacity" suit is the governmental entity, rather than the named official, the target of such a claim is the entity's "policy or custom." *Hafer,* 502 U.S. at 25. "Personal-capacity suits, on the other hand, seek to impose individual liability upon a government officer for actions taken under color of state law." *Id.* Therefore, if the claim against Administrator Crawford is an "official-capacity" claim, he will enjoy the same immunity from money damages as the State of West Virginia. If the claim is a "personal-capacity" claim, Crawford will not be afforded the same protection, although he "may assert personal immunity defenses such as objectively reasonable reliance on existing law." *Id.*; *see also Kentucky v. Graham*, 473 U.S. 159, 165-66, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) (recognizing that "[p]ersonal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law," while "[o]fficial-capacity

suits, in contrast, 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)).

The determination of whether a defendant has been named in his official or individual capacity is generally made by examining "the face of the complaint." *Amos v. Md. Dep't of Pub. Safety & Corr. Servs.*, 126 F.3d 589, 609 (4th Cir. 1997), *vacated on other grounds by* 524 U.S. 935, 118 S.Ct. 2339, 141 L.Ed.2d 710 (1998). Nonetheless, "a plaintiff need not plead expressly the capacity in which he is suing a defendant in order to state a cause of action under § 1983." *Biggs v. Meadows*, 66 F.3d 56, 60 (4th Cir. 1995). "When a plaintiff does not allege capacity specifically, the court must examine the nature of the plaintiff's claims, the relief sought, and the course of proceedings to determine whether a state official is being sued in a personal capacity." *Id.* at 61. In *Foreman v. Griffith*, the Fourth Circuit discussed the significance of the factors outlined in *Biggs*:

> With respect to assessing the nature of a plaintiff's claim or claims, the *Biggs* court stated that the plaintiff's failure to allege that the defendant acted in accordance with a governmental policy or custom or the lack of indicia of such a policy or custom on the face of the complaint indicates that a state actor has been sued in his individual capacity. With respect to the nature of the relief sought, the *Biggs* court also stated that the plaintiff's request for compensatory or punitive damages indicates an individual capacity suit since such relief is unavailable in official capacity suits. Finally, with respect to the course of proceedings, the *Biggs* court stated that the defendant's assertion of qualified immunity as a defense indicates an individual capacity suit, since such a defense is only available in individual capacity suits.

81 F. App'x 432, 435 (4th Cir. 2003). Ultimately, "the underlying inquiry remains whether the [p]laintiff's intention to hold a defendant personally liable can be ascertained fairly." *Biggs*, 66 F.3d at 61.

In this case, Crane does not explicitly state in his complaint the capacity in which

he is suing Administrator Crawford. Crane does indicate in the complaint that he named Administrator Crawford as the defendant after reviewing the "chain of command" for the WRJ, and he acknowledges that Administrator Crawford may be immune from monetary damages. (ECF No. 2 at 5). Notwithstanding, in this case, whether Crane is suing Administrator Crawford in his official capacity or personal capacity makes little difference because, in either event, Crane's claims should be dismissed. If Administrator Crawford is being sued in his official capacity for monetary damages, then he is immune from suit; on the other hand, if Administrator Crawford is being sued in his personal capacity for monetary damages, Crane's claims lack merit, which necessitates dismissal at this stage. As such, to the extent that Crane is suing Administrator Crawford in his official capacity for monetary damages, the undersigned **RECOMMENDS** that the claim be **DISMISSED** on the grounds of Eleventh Amendment immunity. *See Templeton v. Bennett*, No. 3:13-6577, 2014 WL 294299, at *2, *8 (S.D.W.Va. Jan. 24, 2014) (adopting PF & R recommending that claim for monetary damages against Administrator Crawford be dismissed on Eleventh Amendment grounds).

With respect to Crane's request for injunctive relief, "the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law;" this is known as the *Ex Parte Young* exception.[6] *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437, 124 S.Ct. 899, 157 L.Ed.2d 855 (2004) (citing *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)); *see also Freeland v. Ballard*, 6 F. Supp. 3d 683, 694 (S.D.W.Va. 2014) ("Pursuant to the Eleventh Amendment, a federal court may enjoin state officials to conform their future conduct to federal law, which is

---

[6] This is one of the three recognized exceptions to Eleventh Amendment immunity. *Lee-Thomas v. Prince George's Cnty. Pub. Sch.*, 666 F.3d 244, 249 (4th Cir. 2012). The other two, waiver and abrogation by Congress, do not apply in this case.

distinguishable from a retroactive monetary award paid from State funds."). "The *Ex Parte Young* exception is directed at 'officers of the state [who] are clothed with some duty in regard to the enforcement of the laws of the state, and who threaten and are about to commence proceedings'" to enforce an unconstitutional act against affected parties. *McBurney v. Cuccinelli, II*, 616 F.3d 393, 399 (4th Cir. 2010) (citing *Ex Parte Young*, 209 U.S. at 155-56). The state officer being sued must have "proximity to and responsibility for the challenged state action" before the exception can be invoked. *Id.* Moreover, the exception "applies only to prospective relief, does not permit judgments against state officers declaring that they violated federal law in the past, and has no application in suits against the States and their agencies, which are barred regardless of the relief sought." *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993) (citations omitted). In the instant action, Crane asks that the Court order Administrator Crawford to bring the WRJ's law library "up to muster immediately." (ECF No. 2 at 10). Presumably within that request for relief is a request that Crane also be permitted more time in the law library. Assuming *arguendo* that such a claim is actionable under § 1983 and falls within the *Ex Parte Young* exception, Crane's request for injunctive relief must be dismissed as moot.

"To be justiciable under Article III of the Constitution, the conflict between the litigants must present a 'case or controversy' both at the time the lawsuit is filed and at the time it is decided. If intervening factual ... events effectively dispel the case or controversy during pendency of the suit, the federal courts are powerless to decide the questions presented." *Ross v. Reed*, 719 F.2d 689, 693-94 (4th Cir. 1983). "'The requisite personal interest that must exist at the commencement of the litigation ... must continue throughout its existence.'" *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68, 117

S.Ct. 1055, 137 L.Ed.2d 170 (1997) (quoting *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 397, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980)). "Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969).

"[A]s a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive and declaratory relief with respect to his incarceration there." *Rendelman v. Rouse*, 569 F.3d 182, 186 (4th Cir. 2009). "The reasons for finding mootness in such a context are clear. Once an inmate is removed from the environment in which he is subjected to the challenged policy or practice, absent a claim for damages, he no longer has a legally cognizable interest in a judicial decision on the merits of his claim." *Incumaa v. Ozmint*, 507 F.3d 281, 287 (4th Cir. 2007). Moreover, "[a]ny declaratory or injunctive relief ordered in the inmate's favor in such situations would have no practical impact on the inmate's rights and would not redress in any way the injury he originally asserted." *Id.*

Nevertheless, a plaintiff's claim should not be dismissed as moot if there is sufficient evidence to conclude that the action is "capable of repetition, yet evading review." *FEC v. Wis. Right to Life*, 551 U.S. 449, 462, 127 S.Ct. 2652, 168 L.Ed.2d 329 (2007). This principle applies only in exceptional circumstances. *See Incumaa*, 507 F.3d at 289. "[I]n the absence of a class action, the 'capable of repetition, yet evading review' doctrine [is] limited to the situation where two elements combine[]: (1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." *Weinstein v. Bradford*, 423 U.S. 147, 149, 96 S.Ct.

347, 46 L.Ed.2d 350 (1975). Mere conjecture that the prisoner may return to the correctional facility and again face the alleged wrong is not enough to clear the mootness hurdle. *Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996); *see also Slade v. Hampton Roads Reg'l Jail*, 407 F.3d 243, 249 (4th Cir. 2005).

Applying these standards, the undersigned **RECOMMENDS** that Crane's request for injunctive relief be dismissed. Crane was recently transferred from the WRJ to Salem Correctional Center. Consequently, Crane is no longer subject to the WRJ's law library policies. Moreover, Crane has not established a "reasonable expectation" that he will return to the WRJ and again be forced to adhere to the law library policies there. Thus, the requested prospective relief would have no practical impact on Crane's rights, nor would it redress his alleged injuries. *See Templeton*, 2014 WL 294299, at *2, *10 (adopting PF & R recommending dismissal of request for injunctive relief where prisoner had been transferred and had not shown "reasonable expectation" that he would return to same facility).

### C. Crane's Suit Against Administrator Crawford in his Personal Capacity

As mentioned above, Crane does not state in his complaint the capacity in which he has named Administrator Crawford as a defendant. Assuming *arguendo* that Crane has sued Administrator Crawford in his personal capacity, Crane's complaint still fails to a state a plausible claim for relief. Crane alleges in his complaint that the "inadequate operation of the law library" at the WRJ violates his Sixth Amendment right to counsel.[7] (ECF No. 2 at 4, 6). He asserts that the materials provided in the law library are

---

[7] The right of access to the courts does not arise under the Sixth Amendment; rather, the right finds its basis in the First Amendment and due process principles. *See, e.g.*, *Osborn v. Maynard*, No. AW-12-560, 2012 WL 752410, at *1 (D.Md. Mar. 6, 2012).

inadequate and that he was not provided enough time in the law library during his pretrial proceedings.

In *Bounds v. Smith*, 430 U.S. 817, 828, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), the Supreme Court held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." Almost twenty years later, in *Lewis v. Casey*, 518 U.S. 343, 351, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996), the Court made clear that "*Bounds* did not create an abstract, freestanding right to a law library or legal assistance." *See Murphy v. Inmate Sys. Mgmt.*, *Inc.*, No. 1:03-0170, 2008 WL 793631, at *10 (S.D.W.Va. Mar. 20, 2008) ("[P]risoners do not have a right per se to a law library or legal assistance."). Instead, according to the *Lewis* Court, *Bounds* reaffirmed a prisoner's right to meaningfully access the courts. *Lewis*, 518 U.S. at 351. The Court explained that in order for a prisoner to bring a plausible claim that access to the courts has been obstructed by an inadequate law library, the prisoner must demonstrate actual injury or "that alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim."[8] *Id.* The Court provided some examples of a passable claim: "[A prisoner] might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library

---

[8] The Court analogized a freestanding law library claim without some demonstrable injury to a claim that a prison's medical facilities are inadequate by a healthy inmate who needs no medical care. *Lewis*, 518 U.S. at 350. If such claims were allowed to proceed, "the essential distinction between judge and executive would ... disappear[]: it would ... become the function of the courts to assure" that adequate law libraries or medical facilities are established within the prison system. *Id.*

that he was unable even to file a complaint." *Id.* The Court added that "*Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement." *Id.* at 355. Similarly, in the habeas corpus context, the Supreme Court has held that a pretrial detainee does not possess a clearly established right to access a law library under the Sixth Amendment. *Kane v. Garcia Espitia*, 546 U.S. 9, 10, 126 S.Ct. 407, 163 L.Ed.2d 10 (2005).

Here, Crane has not alleged with any specificity in his complaint how he was injured by the WRJ's allegedly inadequate law library policies. *See Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (recognizing that plaintiff bringing denial of access to courts claim must allege claim with specificity). Although Crane asserts that the alleged law library deficiencies prevented him from performing adequate legal research during his pretrial proceedings, he does not explain how this research would have helped him in his criminal case, or what, if any, claims he was prevented from pursuing, either in state court or federal court, as a result of the law library not being up to par. *See Michau v. Charleston Cty., S.C.*, 434 F.3d 725, 728 (4th Cir. 2006) (rejecting denial of access claim where complaint did "not specifically explain how [plaintiff] was injured by any limitations on his access to the law library."). Indeed, it appears from Crane's numerous filings in this Court that he was able to perform a moderate amount of legal research while housed at the WRJ. *See, e.g.*, (ECF No. 16). Notably, other federal courts have squarely rejected claims similar to those raised in Crane's complaint. For example, at least two federal district courts within the Fourth Circuit have rejected arguments that the right to

access the courts is violated by limiting an inmate to one hour of law library time every week or every other week, where no actual harm from the time limitation is shown. *See Watts v. Johnson*, No. 7:07-cv-00323, 2007 WL 2110341, at *1-*2 (W.D. Va. July 18, 2007); *Sterling-Earl v. Gray*, No. 7:06CV00196, 2006 WL 1318367, at *5-*6 (W.D. Va. May 15, 2006); *Skundor v. Painter*, No. 5:00-0463, 2002 WL 32334397, at *4-*6 (S.D.W.Va. Sept. 26, 2002); *see also Benjamin v. Kerik*, 102 F. Supp. 2d 157, 164 (S.D.N.Y. 2000) ("In order for an inmate to show that the library or legal assistance program hindered his efforts to pursue a civil legal claim, he must show that he encountered more than mere delay or inconvenience.").

Furthermore, in his memoranda, Crane mentions having appointed counsel during his pretrial proceedings, and presumably, Crane was represented by counsel through the duration of the criminal case. This fact seriously belies any claim by Crane that he was prevented from meaningfully accessing the courts during his state criminal proceedings. *See Smith v. Bounds*, 813 F.2d 1299, 1302 (4th Cir. 1987) ("*Bounds* held that either remedy, law libraries or attorney assistance, could fulfill the constitutional requirement of access."); *Horton v. Berkebile*, No. 5:10-0290, 2012 WL 5825691, at *7 n.5 (S.D.W.Va. Oct. 26, 2012) (going so far as to state "[i]t is well established that the representation by counsel negates a prisoner's claim of inadequate access to the courts."), *report and recommendation adopted by* 2012 WL 5621240 (S.D.W.Va. Nov. 15, 2012); *Benjamin*, 102 F. Supp. 2d at 164 ("[T]he right of access to courts is not infringed where prisoners are not supplied with an adequate prison library, so long as they were provided with appointed counsel."); *cf. Clenney v. Coffey*, No. PJM-10-1314, 2010 WL 2730628, at *2 (D.Md. July 9, 2010) (recognizing that jail official was "not required to accommodate [prisoner plaintiff's] desire to supplement the services of the public defender's office with

24

research."). Even if Crane declined his right to appointed counsel, a right to access the law library did not "spring up" as a result of that choice. *United States v. Byrd*, 208 F.3d 592, 593 (7th Cir. 2000); *see also United States v. Chatman*, 584 F.2d 1358, 1360 (4th Cir. 1978).

In sum, Crane has not alleged an actionable injury in his complaint that can be traced to the WRJ's law library policies. Rather, Crane seems to bring his claims under the misunderstanding that he has a "freestanding right to a law library," including the assistance of a paralegal. *Lewis*, 518 U.S. at 351. The existence of such a claim was rejected in *Lewis*, and it must be here too. Therefore, to the extent that Crane has brought suit against Administrator Crawford in his personal capacity, the undersigned **FINDS** that his claim should be dismissed. In addition, given that the undersigned's finding that Crane's claim against Administrator Crawford in his official capacity is barred by immunity, in part, and moot, in part, the undersigned **RECOMMENDS** that Administrator Crawford's Motion to Dismiss Complaint, (ECF No. 10), be **GRANTED**, and that Crane's Complaint, (ECF No. 2), be **DISMISSED**.[9]

### D. Crane's Motion to Impose Sanctions and Motion to File for Sanctions

As explained above, Crane has filed a Motion to Impose Sanctions, (ECF No. 38), and a Motion to File for Sanctions, (ECF No. 46), under Federal Rule of Civil Procedure 11. Outside of the *ad hominem* attacks contained in Crane's memoranda and the minor

---

[9] Since the undersigned is recommending that Administrator Crawford's initial motion to dismiss be granted, the undersigned **RECOMMENDS** that Administrator Crawford's Motion to Dismiss Complaint for Failure to Exhaust Administrative Remedies, (ECF No. 30), be **DENIED** as moot. Furthermore, to the extent that Crane requests that this Court dismiss his charges or free him from state custody, (ECF No. 2 at 10; ECF No. 34), this § 1983 proceeding is not the correct procedural vehicle to seek such relief. *See, e.g.*, *Preiser v. Rodriguez*, 411 U.S. 475, 490, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973) ("Congress has determined that habeas corpus is the appropriate remedy for state prisoners attacking the validity of the fact or length of their confinement, and that specific determination must override the general terms of § 1983.").

errors identified by Crane (e.g. counsel mistakenly stating Crane had filed an amended complaint), Crane's request for sanctions appears to be based on what he perceives to be inconsistencies in Administrator Crawford's response to Crane's motion for default judgment. In addition, Crane takes issue with how counsel describes his previous lawsuit against Tygart Valley Regional Jail and counsel's assertion that Crane has not exhausted his administrative remedies.

Federal Rule of Civil Procedure 11(c)(1) permits a federal court to impose "an appropriate sanction" on any attorney or party that violates Rule 11(b). [10] In short, Rule 11(b) states that the presentation of a signed pleading, written motion, or other paper to the court is a certification by the presenter that to the best of his or her knowledge after a reasonable inquiry, (1) the filing is not being presented for an improper purpose, (2) the claims or defenses contained therein are nonfrivolous, (3) the factual contentions have evidentiary support or will likely find evidentiary support, and (4) any denials of factual contentions are based on evidence or lack of information. Where a party suspects that an opposing party has violated Rule 11(b), that party may file a motion for sanctions under Rule 11(c)(2), which provides that "[t]he motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets." In other words, Rule 11(c)(2) requires that "[t]he party seeking sanctions ... serve the Rule 11 motion on the opposing party at least twenty-one days before filing the motion with the district court, and sanctions may be sought only if the challenged pleading is not withdrawn or corrected within twenty-one days after

---

[10] Sanctions include "nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." Fed. R. Civ. P. 11(c)(4).

service of the motion." *Brickwood Contractors, Inc. v. Datanet Eng'g, Inc.*, 369 F.3d 385, 389 (4th Cir. 2004). "[F]ailure to comply with the procedural requirements [of Rule 11(c)(2)] precludes the imposition of the requested sanctions." *Id.*

In this case, counsel is correct that Crane ran afoul of the "safe harbor" provision contained in Rule 11(c)(2) when he simultaneously served his Motion to Impose Sanctions on counsel and filed the motion with the Clerk of Court. Crane's position that he informally notified counsel that he would be seeking sanctions throughout his other memoranda is unconvincing, especially in light of Rule 11(c)(2)'s command that "a motion for sanctions must be made separately from any other motion." Procedural defects aside, the undersigned **FINDS** that sanctions are not warranted when the substance of Crane's request is considered. There simply is no evidence in this case that counsel violated Rule 11(b). While Crane may take issue with counsel's description of certain facts, parties typically have fair-minded disagreements over how the facts are presented, and attorneys are obliged, within ethical bounds, to present the facts in the way that they believe is most persuasive to their position. Moreover, many of the issues that Crane raises are minor or misread the content of the memoranda filed by counsel. For example, counsel appears to have made an honest mistake in asserting Crane had filed an amended complaint. (ECF No. 24 at 1). Certainly that is not sanctionable conduct. Another example—Crane claims that counsel inaccurately described his lawsuit against Tygart Valley Regional Jail as frivolous; however, counsel stated that the complaint was dismissed in that case, and that the complaint filed in *this case* was frivolous. (ECF No. 11 at 4). Even assuming that counsel's analogy between the two cases implied that the prior action was frivolous, it is merely a characterization of how counsel views that lawsuit. Considering that Crane did not name a proper defendant in that case, his claim was arguably frivolous in that there

was no basis in law to support his claim. To the extent that Crane faults counsel for raising the defense of exhaustion, there is nothing improper about counsel's conduct, particularly given counsel's ability to produce an affidavit demonstrating that Crane did not follow the grievance appeal process. While Crane insists he was not aware of an appeal process and did not receive a response to his grievance, at most, these claims create a factual dispute between the parties, not sanctionable conduct on counsel's behalf. Finally, Crane focuses heavily on counsel's statement that Administrator Crawford is "entitled to a trial on the merits" in the response to Crane's motion for default judgment (ECF No. 24 at 2). Although it is true that Administrator Crawford has filed motions to dismiss, which indicate that he does not desire a trial on the merits of the complaint, when Administrator Crawford's response brief is read in its entirety, it seems that he hoped for a *decision* on the merits of the complaint, not necessarily in the form of a trial. While Administrator Crawford's response brief may not be a model of clarity, the statements and arguments contained therein fall well short of Rule 11(b)'s prohibitions.[11]

For these reasons, the undersigned **RECOMMENDS** that Crane's Motion to Impose Sanctions, (ECF No. 38), be **DENIED**. Furthermore, the undersigned **RECOMMENDS** that Crane's Motion to File for Sanctions, (ECF No. 46), which concerns the same conduct, be **DENIED** as moot, because that motion has already been filed by the Clerk of Court.

## IV.   <u>Proposal and Recommendations</u>

For the reasons stated, the undersigned respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that:

---

[11] Insofar as Crane requests attorney's fees as a sanction, Crane filed this case *pro se*, and thus, he cannot obtain an award of attorney's fees. *See, e.g., Hays v. Town of Gauley Bridge, WV*, No. 2:09-1272, 2012 WL 930332, at *3 n.2 (S.D.W.Va. Mar. 19, 2012).

1.     Crane's Complaint, (ECF No. 2), be **DISMISSED**, **with prejudice**;

2.     Defendant's Motion to Dismiss Complaint, (ECF No. 10), be **GRANTED**;

3.     Crane's Motion for Default Judgment, (ECF No. 19), be **DENIED**;

4.     Defendant's Motion to Dismiss Complaint for Failure to Exhaust Administrative Remedies, (ECF No. 30), be **DENIED** as **MOOT**;

5.     Crane's Motion to Impose Sanctions, (ECF No. 38), be **DENIED**; and

6.     Crane's Motion to File for Sanctions, (ECF No. 46), be **DENIED** as **MOOT**.

Plaintiff is notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, Plaintiff shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Chambers, and Magistrate Judge Eifert.

29

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Plaintiff, the Defendant, and any counsel of record.

**FILED:**  November 5, 2015

Cheryl A. Eifert
United States Magistrate Judge